UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Sean Hamilton,

                                    Plaintiff,

                v.

Commissioner of Social Security,

                                    Defendant.

_____

**Decision and Order**

18-CV-1509 HBS
(Consent)

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court

has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in

brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 18,

24.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the

"Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or

Supplemental Security Income under Title XVI, of the Social Security Act.  The Court has deemed

the motions submitted on papers under Rule 78(b).

## II.   DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry.  We

must first decide whether HHS applied the correct legal principles in making the determination.  We

must then decide whether the determination is supported by substantial evidence."  *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district

court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as

"'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts.  *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994).  When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000).  In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998).  The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion.  *Id.*  "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*"  *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends.  20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, the ALJ has an affirmative duty to develop the record.  *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

3

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the Commissioner's final determination by arguing that the ALJ failed to obtain opinions from treating or consultative examiners about his psychiatric functioning.  The ALJ found that plaintiff had the severe impairments of depressive disorder, anxiety disorder, bronchial asthma, and bipolar disorder.  [18.]  After determining that plaintiff met no relevant medical listing, the ALJ found that plaintiff had the RFC for medium work with some non-exertional limitations. [20.]  In reaching the RFC, the ALJ acknowledged, after giving one conclusory opinion little weight, "that there is no other opinion evidence in this record because the claimant refused to cooperate at the initial level."  [24.]  Plaintiff criticizes the ALJ's decision to proceed:

> Plaintiff was diagnosed by doctors with depression, panic attacks, bipolar disorder, anxiety, asthma, and other conditions and he had ongoing treatment and limiting effects, but the ALJ did not obtain functional assessments of his conditions. (Tr. 1-493).  The ALJ found Plaintiff had severe impairments of: depressive disorder, anxiety disorder, bronchial asthma, and bipolar disorder. (20 CFR § 404.1520(c) and 416.920(c).  (Tr. 14).  The ALJ found non-severe impairments of non-severe impairments of: obesity and substance abuse.  (Tr. 14).  Yet, the ALJ's RFC finding is devoid of medical opinion support and based entirely on his own lay opinion.  (Tr. 7-28).  The ALJ did not sufficiently develop the record about Plaintiff's mental health and medical disorders.  *See Matta v. Colvin*, 2016 WL 524652, *11–12 (S.D.N.Y. 2016); citing *Melendez v. Colvin*, 2015 WL 5512809 *5 (N.D.N.Y. 2015). ("…Where, as here, the ALJ failed to fully develop the record regarding an allegedly severe impairment, it is impossible for the ALJ to have considered whether that impairment meets a listing, or has an additional effect on the claimant's RFC.  *See Texidor v. Astrue*, 2014 WL 4411637, *3 (D. Conn, Sept. 8, 2014).").  *See Coleman v. Colvin*, 2015 WL 1190089, *10 (S.D.N.Y. 2015) (The court found great weight should not be accorded to the opinion of a non-examining State agency consultant whose opinion is based on an incomplete record that lacks the opinion of the claimant's primary treating psychiatrist).

4

In the instant case, the ALJ failed to further develop the record by obtaining functional assessments from treating doctors or consultative examiners that reflect all of Plaintiff's conditions and limiting effects, and improperly used lay opinion in RFC findings. (Tr. 7-28). The written [opinion of] SARP Butensky is not considered substantial evidence as it was incomplete. (Tr. 100-102). An opinion that is not based on a complete medical record cannot constitute substantial evidence. *See Griffith v. Astrue*, 2009 WL 909630, fn. 9 (W.D.N.Y. 2009) (finding that "the State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"). The ALJ also was aware of missing records and relied on [the] non-examining opinion of [] SARP Butensky who was unable to provide an opinion because of insufficient records (missing adult functional report and consultative exam). (Tr. 7-28, 100-102). Plaintiff submitted adult functional report to SSA in 2017, so the ALJ had it available, and was able to order a consultative exam. (Tr. 255-262). 20 C.F.R. § 404.1519-1519(a).

(Dkt. No. 18-1 at 19–20.) The Commissioner disagrees that the record available in this case required the ALJ to seek medical opinions from any providers:

Plaintiff argues that the ALJ was required to seek a medical opinion because there is no function-by-function assessment in the record. Pl. Br. at 21. However, the applicable regulations do not require the agency to request medical opinions from a claimant's providers. *See* 20 C.F.R. §§ 404.1512(b)(1), 416.923(b)(1) (noting that the agency will assist a claimant in obtaining medical evidence from his or her medical sources; does not mention medical opinions); 20 C.F.R. §§ 404.1513(a), 416.913(a) (categories of evidence distinguishing medical opinions from general category of objective medical evidence). Moreover, while Plaintiff argues that the ALJ could not make such a detailed RFC assessment without a medical opinion, it is clear that the ALJ very conservatively included significant mental limitations in the RFC based on Plaintiff's subjective complaints in an abundance of caution. Tr. 16-18. There is no medical evidence, either in the record before the ALJ or in the records submitted after the hearing to suggest greater limitations than those in the RFC. Indeed, as the ALJ noted and as described above, Plaintiff's mental status examinations were generally normal and he frequently failed to follow directions from urgent care and emergency department physicians to establish regular mental health care. Tr. 18; *see Lesanti v. Comm'r of Soc. Sec.*, -- F.Supp.3d ----, 2020 WL 500986, at *8 (W.D.N.Y. Jan. 30, 2020) (EAW) (noting that the ALJ properly consider[ed] claimant's failure to follow prescribed treatment recommendations as evidence that claimant's condition was not as severe as alleged); *see also Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (failure to seek regular treatment for allegedly disabling conditions undermines allegations of disability). The RFC more than adequately accounts for any limitations suggested by the evidence, and it was not necessary for the ALJ to obtain a medical opinion in this case.

(Dkt. No. 24-1 at 18–19.)

5

The Commissioner has the better argument.  "If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence."  20 C.F.R. § 404.1520b(a); *see also* 20 C.F.R. § 416.920b(a) (same).  "We will assess your residual functional capacity based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. § 416.945(a)(3) (same).  Here, the available record presented no information that required interpretation by a clinical or consultative professional.  A mental and emotional health evaluation for substance abuse relapse on October 27, 2014 listed "NA" in the area marked, "Clinician's findings and conclusions in this functional area."  [285.]  A probation-referred evaluation in April 2015 did not indicate the need for immediate, intermediate, or long-term management plans; a recommendation was made only for a coping plan to be reviewed with the supervisor and a psychiatric assessment to occur at a later time.  [310, 327.]  *Cf. Brown v. Comm'r*, No. 15-CV-06685 (SN), 2016 WL 3039892, at *16 (S.D.N.Y. May 27, 2016)  ("Although T.S. occasionally reported elevated anxiety levels to his therapists, it appears that Mr. Gotay's recommended coping mechanisms were sufficient to help T.S. to identify the source of his anxiety and deal with it on his own.").  An emergency-room visit for anxiety on April 17, 2015 ended with an assessment that plaintiff experienced an anxiety attack that resolved during his time at the hospital.  [337.]  Plaintiff disclosed a history of mild symptoms with his anxiety during a clinical visit on April 22, 2015.  [346.]  This same evaluation stated explicitly that, in the context of compliance with treatment, plaintiff has "difficulty understanding directions."  [346.]  Without any need for interpretation, the ALJ accounted for problems with following directions through the non-exertional limitations in the RFC.  During a clinical evaluation on October 3, 2015, plaintiff again was assessed as having anxiety and depression and had a psychiatric medication refilled.  [399.]  Some cognitive behavioral therapy

sessions in 2016 appear to have helped plaintiff focus on his anxious thoughts, and the social worker

noted that plaintiff took his medications consistently.  [425.]  *Cf. Perez v. Colvin*, No. 13 CIV. 3713

AJP, 2014 WL 2462992, at *15 (S.D.N.Y. June 2, 2014) (ALJ did not need a consultative intelligence

examination because of sufficient information in the record to assess non-exertional limitations); *see*

*also Tankisi v. Comm'r*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order) ("However, an ALJ is not

required to order a consultative examination if the facts do not warrant or suggest the need for it.").

The above clinical notes, and others that the Commissioner has cited, show a consistent pattern:

Plaintiff certainly has the severe impairments that the ALJ noted, but the impairments do not rise to

a level where a clinical or consultative opinion would be necessary to interpret plaintiff's functioning.

Under these circumstances, substantial evidence supports the RFC that the ALJ crafted.

Plaintiff next challenges the Commissioner's final determination on the basis of a refusal to

consider new evidence.  Plaintiff had his hearing before the ALJ on September 28, 2017 and was

represented by the same firm representing him in this case.  At the hearing, counsel identified certain

records from Erie County Medical Center  ("ECMC") that had not arrived as of the time of the

hearing. [73.]  The ALJ agreed to leave the record open for two weeks to allow counsel to obtain

the records. [73.]  Counsel neither obtained the records within two weeks nor sought an extension.

The ALJ proceeded to issue the decision on January 31, 2018; plaintiff eventually obtained the

records and submitted them to the Appeals Council.  The Appeals Council rejected the additional

records as untimely and as unlikely to change the outcome of the ALJ's determination. [6.]  Plaintiff

now argues that the Appeals Council should have considered the additional records:

> The new and material evidence was submitted after the ALJ's decision from
> January 31, 2018. (Tr. 34-51).  The evidence at issue is related to the nature and
> severity of Plaintiff's mental conditions and limiting effects.  It is probative, not
> merely cumulative, and would reasonably influence the ALJ's determination to favor
> disability.  There are two probative pieces related to this new and material evidence.
> First, it illustrates that Plaintiff's mental conditions were limiting to such an extent

that it supported disability and warranted home health care services.  Second, it further highlights the ALJ's glaring errors in not further developing the record by obtaining medical and psychiatric functional assessments from Plaintiff's treating doctors or providers, or obtaining consultative exams.

(Dkt. No. 18-1 at 24–25.)  The Commissioner responds that plaintiff simply has not made enough

of a showing to disturb the final determination to review the additional records:

> On November 15, 2017, more than seven weeks after the hearing, Plaintiff's counsel submitted evidence from two ECMC visits that predated the hearing, and five visits that post-dated the hearing.  Tr. 42-51.  However, the ALJ declined to admit this evidence because the requirements of 20 C.F.R. §§ 404.935(b) and 415.1435(b) were not met.  Tr. 11.  Plaintiff argues that because he sought records before the hearing but the evidence was not received, the ALJ should have permitted an exception to the "five-day rule," without demonstrating that any exception was warranted.  Pl. Br. at 23.  Regardless of 20 C.F.R. §§ 404.935(b) and 415.1435(b), the ALJ clearly stated that he would hold the record open for two weeks after the hearing and instructed Plaintiff to request an extension of time if more time was needed.  Tr. 69, 93.  Plaintiff's counsel affirmed that two weeks was sufficient time, and did not manifest any lack of understanding as to the ALJ's directive to request more time if necessary.  Tr. 69, 93.  Plaintiff has still not offered any reason for his failure to request additional time.
>
> However, regardless of any timeliness issues, the additional records from ECMC all reflect normal mental status examination results and do not discuss any functional limitations.  Tr. 42-51.  Accordingly, even if the Court were to determine that the ALJ should have admitted the records, any error in doing so was harmless, as they did not suggest greater limitations than those set forth in the RFC and would not have affected the ALJ's decision.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).

(Dkt. No. 24-1 at 8–9.)

The Commissioner again has the better argument.  The Commissioner, through the Appeals

Council or otherwise, has the ability to review or to reopen a claim based on new and material

evidence.  *See* 42 U.S.C. § 405(g); 20 C.F.R §§ 404.970(a)(5), 416.1470(a)(5), 404.988(b), 416.1488(b),

404.989(a)(1), 416.1489(a)(1).  "The Social Security Act provides that a court may order the Secretary

to consider additional evidence, but only upon a showing that there is new evidence which is

material and that there is good cause for the failure to incorporate such evidence into the record in a

prior proceeding.  Thus, an appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.  The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently.  Finally, claimant must show (3) good cause for her failure to present the evidence earlier." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted).  Here, plaintiff has not shown good cause for the failure to make an earlier presentation.  The ALJ generously took no action in plaintiff's case between September 28, 2017 and January 31, 2018, even without having heard from plaintiff's counsel.  Counsel had plenty of time to submit the records in question and could have sought extensions if necessary.  *Cf. Scates v. Comm'r*, No. 1:12-CV-408, 2014 WL 1092081, at *6 (E.D. Tenn. Mar. 17, 2014) ("Plaintiff contends the ALJ should have held open the record indefinitely to wait for Dr. Graves's records.  In this case, the Court cannot conclude that the duty of an ALJ to fairly and fully develop the record requires the ALJ to deviate from 20 C.F.R. § 405.331 in such a way.  The regulation requires that materials be submitted five days before a hearing, but it carves out certain exceptions for evidence filed after that deadline and even after the hearing. As shown above, however, Plaintiff did not fall into any exception.  Particularly in light of the fact that Plaintiff was represented by counsel, the Court cannot find that the magistrate judge erred in determining the ALJ satisfied his obligation to fairly and fully develop the record in this case.").  Plaintiff fails the other two prongs of *Tirado* as well.  The proposed new records contain information about medical codes for depression and anxiety.  [44.]  A clinical examination on September 6, 2017 repeated other information in the record about plaintiff's potential benefit from undergoing cognitive behavioral therapy. [46.]  The information remained consistent into November 2017.  [54.]  *Cf. Borrero*

*Fernandez v. Comm'r*, No. 16CIV4533NSRPED, 2017 WL 4330374, at *12 (S.D.N.Y. Aug. 30, 2017) ("The 'new' treatment notes from Dr. Mejia are substantially similar to the treatment notes the ALJ analyzed in her decision."), *report and recommendation adopted*, No. 16CV4533NSRPED, 2017 WL 4326528 (S.D.N.Y. Sept. 26, 2017).  On substance, there is simply nothing in the proposed new records that the ALJ would not have seen or considered from the prior records or from testimony at the hearing.  Under these circumstances, the Court concludes that the proposed new records are cumulative and unlikely to change the Commissioner's final determination.

In sum, plaintiff's arguments amount to a disagreement with the ALJ over how the factual information in the record led to the crafting of the RFC.  Resolving factual disagreements is where the substantial-evidence rule has maximum effect.  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see also Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("We examine evidence both supporting and detracting from the decision, and we cannot reverse the decision merely because there exists substantial evidence supporting a different outcome.") (citation omitted); *Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *5 (W.D.N.Y. July 18, 2019) (affirming ALJ resolution of RFC where treating physician records supported exertional limits despite other evidence in the record).  Under these circumstances, the Court is obligated to affirm the Commissioner's final determination regardless of how it might have viewed the evidence in the first instance.

### III.    CONCLUSION

The Commissioner's final determination was supported by substantial evidence.  For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 24) and denies plaintiff's cross-motion (Dkt. No. 18).

The Clerk of the Court is directed to close the case.

SO ORDERED.

_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: July 27, 2020

11